**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **Jorge Fournier-Olavarria,**<br><br>        Petitioner<br><br>              v.<br><br>**United States of America,**<br><br>        Respondent. | CIVIL NO. 14-1351 (PG)<br>Related Crim. No. 07-290 (PG) |

**OPINION AND ORDER**

Before the court is petitioner Jorge Fournier-Olavarria's ("petitioner" or "Fournier") motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Docket No. 1), and the United States' (or the "government") response in opposition thereto (Docket No. 6).[1] For the reasons explained below, the court **DENIES** petitioner's motion to vacate.

**I.    BACKGROUND**

On July of 2007, a grand jury indicted Fournier and ninety-four other individuals for conspiring to possess and distribute narcotics within 1,000 feet of a public housing facility. See Crim. No. 07-290 (PG) (hereinafter "Crim."), Docket No. 2. The grand jury also indicted Fournier and other defendants for aiding and abetting the use or carrying of a firearm in furtherance of a drug crime. Id. Succinctly, from January 2003 to July 2007 a violent gang known as "the Combo of Dr. Pila" (the "Combo") ran drug distribution points at several public housing projects located in Ponce, Puerto Rico and other neighboring areas and municipalities.[2] Id. The indictment deemed Fournier a "facilitator" within the Combo organization, as he supplied his co-conspirators with guns, ammo and cars, and even financed drug purchases. Id. at p. 16. He entered a plea of not guilty and proceeded to trial.

Following trial by jury, on September 3, 2009, Fournier was found guilty of conspiracy to possess with intent to distribute narcotics in violation of 21 U.S.C. §§ 841, 846 and 860, and of aiding and abetting the possession of guns

---

[1] On September 9, 2014, Fournier filed his reply to the United States' response. See Docket No. 8.

[2] The Combo gang got its name after the Dr. Manuel De La Pila Iglesias Public Housing Project in Ponce, Puerto Rico, where members ran drug-trafficking operations.

in furtherance of the drug-trafficking crime in violation of 18 U.S.C. §§ 2 and 924(c). See Crim. Docket No. 2917. On December 15, 2009, Fournier was sentenced to seventy-eight months of imprisonment as to the drug count, and sixty months as to the gun count, to be served consecutively. Crim. Docket Nos. 3138 and 3155.[3] Petitioner appealed, but the First Circuit Court of Appeals affirmed his conviction and sentence. See United States v. Acosta-Colon, 741 F.3d 179 (1st Cir. 2013); Crim. Docket Nos. 4062 and 4070.

On May 2, 2014, Fournier filed the motion now before the court, alleging he received ineffective assistance of counsel at the trial stage. See Docket No. 1. He raises two issues. First, Fournier avers that the courtroom seating arrangement at trial undercut his ability to communicate with attorney Luis R. Rivera-Rodriguez ("Counsel" or "Rivera").[4] See Docket No. 1-1 at pp. 4-5. Second, Fournier claims that Rivera was ineffective because he failed to object to an alleged courtroom closure during the jury selection process. See id. at pp. 8-13.

On August 15, 2014, the United States filed its response in opposition to petitioner's motion. See Docket No. 6. In short, the government argues that petitioner's courtroom seating claim is underdeveloped, or otherwise contradicted by the record, and should thus be dismissed. Id. at pp. 4-6. With respect to the second issue, the government hesitantly suggests that because the trial record lacks conclusive evidence of a courtroom closure, an evidentiary hearing may be necessary. Id. at pp. 6-10.

## II.   STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral

---

[3] Petitioner later filed a motion for reduction of sentence under 18 U.S.C. § 3582(c)(2). Crim. Docket No. 4202. On August 2015, the court granted the motion and reduced the previously imposed term of imprisonment as to the drug count from seventy-eight months to sixty-three months. Crim. Docket Nos. 4391 and 4392.

[4] Fournier was represented by other counsel throughout the criminal prosecution, but they eventually withdrew. See e.g. Crim. Docket Nos. 451, 874, 887 and 995. Evidently, Fournier retained attorney Rivera before trial proceedings began in August 2009. See id. Docket Nos. 2698 and 3459.

attack." 28 U.S.C § 2255(a); Hill v. United States, 368 U.S. 424, 426-427 (1962); Ellis v. United States, 313 F.3d 636, 641 (1st Cir. 2002).

Moreover, the Sixth Amendment guarantees that in all criminal prosecutions, the accused have a right to the assistance of counsel for their defense. U.S. Const. amend. VI. It has long been recognized that the right to counsel means the right to the effective legal assistance. Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970)). Where, as here, a petitioner moves to vacate his sentence on an ineffective assistance of counsel basis, he must show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Id. 686 (1984); see also Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996) (a petitioner seeking to vacate his sentence based on the ineffective assistance of counsel bears a very heavy burden).

For petitioner's claim to succeed, he must satisfy a two-part test. First, petitioner needs to show that "counsel's representation 'fell below an objective standard of reasonableness.'" Padilla v. Kentucky, 559 U.S. 356, 366 (2010) (quoting Strickland, 466 U.S. at 688). Second, petitioner must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been more favorable to him. See United States v. Carrigan, 724 F.3d 39, 44 (1st Cir. 2013) (citing Missouri v. Frye, 132 S.Ct. 1399, 1409 (2012)). Thus, petitioner must demonstrate both incompetence and prejudice. Failure to prove one element proves fatal for the other. See United States v. Caparotta, 676 F.3d 213, 219 (1st Cir. 2012). Nonetheless, the court "need not address both requirements if the evidence as to either is lacking." Sleeper v. Spencer, 510 F.3d 32, 39 (1st Cir. 2007). Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice…that course should be followed." Strickland, 466 U.S. at 697.

### III.   DISCUSSION

**A. Courtroom Seating**

Fournier's first claim stems from an alleged "bizarre and prejudicial [courtroom] seating arrangement," which allegedly undercut his ability to confer with Rivera during trial. Docket No. 1-1 at pp. 4-5. Due to space limitations,

Fournier and five of his co-defendants sat in the first row of the courtroom's spectator section, approximately ten feet behind defense counsels' table.[5] Docket No. 1-2 at p. 2. The court refers to the hand-drawn sketch of the courtroom submitted by petitioner, see Docket No. 1-2 at p. 2 ("Exhibit A"), because even if inexact, the same provides a relative frame of reference as to the actual seating of the defendants.

The government requests dismissal of this first claim. In short, it argues that Fournier failed to properly develop or otherwise support his contention by -at the very least- mentioning specific instances where he intended but could not communicate with Rivera because of where he was seated. See Docket No. 6 at pp. 4-5. The United States also avers that petitioner's allegations are contradicted by the trial transcripts on record, which demonstrate "open communications between the defense counsels and the defendants." Id. at p. 5. For the reasons that follow, the court sides with the government.

To begin, the court stresses that courtroom seating arrangements vary due to many factors, such as "the size of the courtroom, the number of spectators, the number of defendants and lawyers, acoustics, security provisions, etc.….." United States v. Balsam, 203 F.3d 72, 82 (1st Cir. 2000) (quoting United States v. Turkette, 656 F.2d 5, 10 (1st Cir. 1981) (citing United States v. DeLuca, 137 F.3d 24, 34 (1st Cir. 1998)). The First Circuit has therefore held it "will not interfere with the trial court's decision unless there was a 'clear-cut abuse of discretion.'" Turkette, 656 F.2d at 10. In the context of this case, petitioner must show that attorney Rivera's placement and his own was inherently prejudicial. See Holbrook v. Flynn, 475 U.S. 560, 572 (1986) (the arrangement of the courtroom, which includes the placement of the defendants, their counsel and the security personnel, is subject to challenge only if it is inherently prejudicial) (emphasis added)).

Upon a careful review of Fournier's motion and supporting documents, the court finds he has failed to demonstrate that the arrangement of the courtroom and his seating placement prevented him from conferring with Rivera. To the contrary, the trial transcripts evince that other defendants were able to, and indeed, communicated with their respective attorneys. See e.g. Crim. Docket No. 2866 at pp. 6-7; Docket No. 2872 at pp. 27, 44. The transcripts also show defense

---

[5] Fournier and the following five other defendants charged in the indictment proceeded to a joint trial: Danny Guzman-Correa, Alexis Pabon-Rodriguez, Miguel Pacheco-Ortiz, Fernando Castillo-Morales, and Jose David Acosta-Colon.

attorneys, including Fournier's, reporting that they had received information from their clients during trial recesses. Crim. Docket No. 2866 at p. 3; Docket No. 2872 at pp. 102-103. For example, on the fourteenth day of trial, Rivera stated he spoke with Fournier after noontime. Crim. Docket No. 2872 at p. 103.

Given the aforementioned, the court believes that Fournier had ample opportunity to confer with his attorney regarding any issue, including this one. See Crim. Docket No. 2872 at pp. 102-103. Now, faced with potential dismissal, petitioner changes his story and alleges for the first time that **he instructed counsel to object "several times"** to the courtroom arrangement. Docket No. 8 at p. 3. The court is unpersuaded, not least because Fournier has now admitted that, **despite his seating placement,** he was able to communicate with Rivera "several" (and much too convenient) occasions.

Because petitioner has not evinced that his seating arrangement offended his Sixth Amendment right to assistance of counsel, the court need not determine whether Rivera was ineffective in failing to object. See Strickland, 466 U.S. at 697; Sleeper, 510 F.3d at 39. On this basis, his ineffective assistance of counsel claim cannot succeed.[6]

### B. Courtroom Closure

Petitioner has also alleged that counsel was ineffective because he "failed to voice, twice, timely objections to the courtroom closure…" (during jury selection and the following day). Docket No. 1-1 at p. 8. According to Fournier, this deprived him of his Sixth Amendment right to a public trial. Id. at p. 10.

The Sixth Amendment right to a public trial extends to the jury *voir dire*. See Presley v. Georgia, 558 U.S. 209, 213 (2010) (per curiam) (citation omitted); United States v. Agosto-Vega, 617 F.3d 541, 545 (1st Cir. 2007). Although that right is not absolute, exceptions are few and far between. Agosto-Vega, 617 F.3d at 545. Prior to excluding the public at any stage of a criminal trial, "the

---

[6] Before moving on, the court notes that petitioner has also alleged the courtroom seating arrangement violated his due process rights by "improperly undercut[ting] the presumption of innocence, as the jury may have inferred from the isolated grouping of the jury that defendants pose a security risk." Docket No. 1-1 at p. 5. He further alleges that the Court Security Officers' ("CSO") movements were "defensive in nature and unusual" and may have led the jury to draw an inference of guilt by association. Id. Petitioner claims this denied him the right to a fair trial, so he requests a new one. But the First Circuit has already decided this issue and, unfortunately for Fournier, he is not entitled to the relief he seeks. See Balsam, 203 F.3d at 81-82 (citing Turkette, 656 F.2d at 10) (finding that "[t]he front row section is not an inherently prejudicial location for seating criminal defendants."). As such, any federal due process claims brought by petitioner at this stage are hereby dismissed.

party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives…, and make findings adequate to support the closure." Waller v. Georgia, 467 U.S. 39, 48 (1984) (alteration in original); see also Presley, 558 U.S. at 213–214 (further noting that when a defendant objects to a closure but does not offer alternatives, the judge must think of some on his own).

Here, Fournier insists that the courtroom remained closed on August 6 and August 7, 2009, for jury *voir dire* and the following day. Docket No. 1-1 at p. 8; see also Docket No. 1-2 at pp. 16-38. First, while the record shows that the jury trial was scheduled to begin on August 6, the fact of the matter is that on that day the court instead heard other pre-trial matters and conducted a change of plea hearing, leaving the jury selection for the next day.[7] Crim. Docket Nos. 2812 and 2813. Thus, whether the courtroom was closed on August 6 is inapposite to the court's inquiry because no trial proceedings implicating Fournier's Sixth Amendment right took place on that date.

In light of the foregoing, the court's analysis will be factually circumscribed to the events of August 7, 2009—the first day of Fournier's trial. Before jury *voir dire*, CSOs informed the undersigned that a group of people had arrived in three school-type buses wearing custom printed t-shirts in support of Danny Guzman-Correa, one of Fournier's co-defendants. The situation was discussed at side-bar with the attorneys, at which point the undersigned decided to exclude that specific group of spectators from the courtroom. Crim. Docket No. 3461 at pp. 59-60. Counsel Rivera did not object to said exclusion, and the record so reflects:

| | |
|---|---|
| The court: | All right. I've been informed by my CSO that the marshals informed him that three buses, school-buses type, have arrived here with persons who have T-shirts saying "Danny, we support you and we back you." I'm not going to allow that and I'm not going to tolerate it, and none of those persons are going to walk into the courtroom. They are going to be sent back and they are going to be – |
| Mr. Entin: | I don't think that's appropriate. I had no idea. Send them back. |

---

[7] Also, court adjourned because the undersigned was trying another case during the afternoon.

| | |
|---|---|
| The court: | I'm not blaming you guys. I'm just saying they are here, the marshal told me. And I'm not going to tolerate any activity like that from any of the defendants. So you had better tell you[r] clients during the recess or noon that they had better behave; otherwise, I'm going to exclude them from the courtroom and I'll put a camera next door at the holding cells, and then they can watch the trial from there. |
| Ms. Lizarribar Buxo: | Very well. |
| The court: | I'm going to order the marshals to remove them from the court. |

Id. Now, Fournier has submitted six sworn statements signed by family members and close friends who affirm, under penalty of perjury, that U.S. Marshals excluded them from the courtroom.[8] Docket No. 1-2 at pp. 16-39. The court has carefully reviewed the statements, but finds the facts detailed therein insufficient to show that a closure (be it complete or partial) occurred. As the trial transcript demonstrates, *supra,* the undersigned only ordered the removal of the t-shirt wearers before selecting and empaneling the jury.

It is important to note that Fournier's wife filed a complaint of judicial misconduct against the undersigned based on the alleged courtroom closure. Docket No. 1-2 at p. 14. In the order of dismissal, then-Chief Judge Lynch highlighted the fact that the complainants in that case "[did] not allege and there is no evidence – either in the complaint or in the record – that the judge even knew the complainants were seeking entry, intended to deny the complainants access to the court, or harbored any other illicit animus." Id. Notably, Judge Lynch also stressed that the trial court's order was specific "not to admit a large group of persons visibly supporting another defendant." Id.[9]

### *i. Actual Prejudice*

But assuming *arguendo* that a courtroom closure did occur, and that Fournier's family and friends were excluded during jury *voir dire*, the court

---

[8] The declarants are: (1) Maria Teresa Badea-Arce (Fournier's wife); (2) Jormarie Fournier-Badea (Fournier's daughter); (3) Carmen Milagro Olavarria-Franco (Fournier's aunt); (4) Damaris Fournier-Olavarria (Fournier's sister); (5) Amanda Rodriguez (Fournier's daughter-in-law); and (6) Charlene Rosa (Fournier's friend).

[9] On appeal, the First Circuit understood that Counsel Rivera's failure to object to the alleged closure constituted a classic waiver, and quickly moved on. See Acosta-Colon, 741 F.3d at 186-194.

must still determine whether Fournier is entitled to habeas relief. On the one hand, petitioner maintains that a public trial right violation constitutes structural error, for which reason he need not prove that Rivera's failure to object resulted in actual prejudice. See Docket No. 1-1 at pp. 12-13. On the other hand, the United States suggests that in light of First Circuit precedent, an evidentiary hearing may be appropriate to adjudicate this matter. See Docket No. 6 at pp. 9-10.

Ordinarily, the violation of the constitutional right to a public trial is a structural error. See Waller, 467 U.S. at 49-50 and n.9. The structural error inquiry applies when the alleged error is one that "affects the framework within which the trial proceeds," and not "simply an error in the trial process itself." Arizona v. Fulminante, 499 U.S. 279, 310 (1991). Cf. United States v. Gonzalez-Lopez, 548 U.S. 140, 148 (2006) (quoting Fulminante, 499 U.S. at 310) (noting that trial errors generally subject to harmlessness review are errors that "occurred during presentation of the case to the jury" and their effect may "be quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt"). Fournier asserts that the structural error doctrine requires this court to presume prejudice—-and that automatic reversal of his conviction must follow. Docket No. 1-1 at p. 13.

However, the Supreme Court recently clarified the proper standard within which to evaluate an ineffective-assistance claim premised on counsel's failure to object to a structural-type error. Weaver v. Massachusetts, 137 S. Ct. 1899, 1910-12 (2017). Relevant to this case, the Court recognized that "while the public-trial right is important for fundamental reasons, in some cases an unlawful closure might take place and yet the trial still will be fundamentally fair from the defendant's standpoint." Id. at 1910. Now, when a defendant specifically raises a public-trial violation via an ineffective-assistance-of-counsel claim, a showing of prejudice is required. Id. at 1910-1912.

To satisfy this burden, Fournier must demonstrate a reasonable probability of a different outcome but for counsel's failure to object to the closure or that such failure by counsel rendered his trial fundamentally unfair. Weaver, 137 S. Ct. at 1910-1912. After a careful review of petitioner's motion to vacate and other moving papers--and assuming for argument's sake that actual courtroom closure could be established--, the court finds that Fournier has not alleged, let alone shown, that he was actually prejudiced. And even assuming that Fournier

could also establish prejudice by showing that the public trial violation was so serious as to render his trial fundamentally unfair, he has not.

Consequently, Fournier's ineffective assistance of counsel claim on this basis necessarily fails.

### C. Evidentiary Hearing

Fournier has requested an evidentiary hearing. Docket No. 1. The United States, in turn, believes that one may be necessary as to the courtroom closure claim. But evidentiary hearings in § 2255 cases are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. See Moreno-Morales v. United States, 334 F.3d 140 (1st Cir. 2003). A hearing "is not necessary when a § 2255 petition is inadequate on its face, or although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978).

In Fournier's case, even if the court deemed his petition as facially adequate, the fact of the matter is that the record belies his allegations. Having ruled that the petitioner's ineffective assistance of counsel claims lack merit, the court finds that a hearing is not warranted. Accordingly, Fournier's request is **DENIED.**

### IV. CONCLUSION

In short, the court concludes that Fournier failed to establish that trial counsel's performance fell below an objective standard of reasonableness or that the alleged errors on counsel's part produced "'a fundamental defect which inherently results in a complete miscarriage of justice….'" Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994) (quoting Hill, 368 U.S. at 428)). In so ruling, the court also takes into account the interest of finality of judgments and the costs and uncertainties associated with vacating petitioner's sentence.

Based on the foregoing, petitioner's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Docket No. 1) is hereby **DENIED,** and the case is **DISMISSED WITH PREJUDICE.** Judgment shall be entered accordingly.

## V. CERTIFICATE OF APPEALABILITY

It is further ordered that no certificate of appealability should be issued in the event that the petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, January 19, 2018.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**
